UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARQUIS KINNEL,
　　*Plaintiff*,

　　v.

STATE OF CONNECTICUT, and
DR. GERALD VALLETTA,
　　*Defendants*.

No. 3:22-cv-538 (VAB)

**INITIAL REVIEW ORDER**

Marquis Kinnel ("Plaintiff"), a sentenced[1] *pro se* inmate in the custody of the Department

of Correction ("DOC"), filed this this civil rights Complaint[2] under 42 U.S.C. § 1983 against the

State of Connecticut and Dr. Gerald Valletta. Compl., ECF No. 1 (April 14, 2022).

His Complaint asserts violation of his rights under the Eighth and Fourteenth

Amendments of the United States Constitution, as well as state law claims, in connection with

the medical care provided for his left shoulder. *Id.* at 1–9. He seeks damages, declaratory

judgment, and injunctive relief. *Id.* at 9–10.

For the following reasons, the Complaint is **DISMISSED** without prejudice.

The Court will afford Mr. Kinnel an opportunity to file an Amended Complaint, by

**December 9, 2022**, to correct the deficiencies identified in this Initial Review Order.

---

[1] The Court may "take judicial notice of relevant matters of public record." *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The publicly available Connecticut DOC website shows that Mr. Kinnel was sentenced on November 9, 2012 to a sentence of twenty years and that he is currently housed at Corrigan-Radgowki Correctional Center ("Corrigan"). *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=341411 (Last visited Oct. 20, 2022).

[2] Mr. Kinnel is proceeding *in forma pauperis.* Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2; Order, ECF No. 7 (granting motion for leave to proceed *in forma pauperis*).

I.      **FACTUAL BACKGROUND**[3]

In May 2017, Mr. Kinnel allegedly injured his left shoulder while sleeping. Compl. at 4 ¶ 11. A week or two after he allegedly wrote an inmate request to the medical unit, he was allegedly seen by Dr. Valletta, who was a member of the medical staff at Garner Correctional Institution ("Garner"). *Id.* at 2 ¶ 6, 4 ¶ 12. Mr. Kinnel allegedly explained that he was in a lot of pain and may have a rotator cuff tear. *Id.* at 4 ¶ 12. Dr. Valletta allegedly expressed that he did not agree; after he conducted a thorough exam of Mr. Kinnel, Dr. Valletta allegedly informed him that he needed a steroid shot. *Id.*

On June 5, 2017, Dr. Valletta allegedly put in an order for Mr. Kinnel's treatment for his left shoulder. *Id.* at 4 ¶ 13. On June 16, 2017, Dr. Valletta allegedly administered two shots into Mr. Kinnel's left shoulder. *Id.* at 4 ¶¶ 14–15. One shot was allegedly to numb the area, while the other shot was allegedly to alleviate Mr. Kinnel's pain. *Id.* at 4 ¶ 15.

One or two months later, Mr. Kinnel allegedly felt worse than before he received the shots and could not lift his arm. *Id.* at 4–5 ¶ 16. He allegedly had an emergency visit to the medical unit and was examined by Dr. Valletta, who allegedly told him to wait a few months, do some exercises, and take his pain medication. *Id.*

Mr. Kinnel allegedy continued to experience pain and continued to complain. *Id.* at 5 ¶ 17. He was allegedly seen by medical staff in October 2017. *Id.* He was allegedly provided with an examination, an x-ray (which came back normal), and offered another shot in his arm. *Id.* He allegedly refused the shot because he had been able to lift his arm properly and experienced only a little pain prior to having his first shot. *Id.*

---

[3] All factual allegations are drawn from the Complaint.

In November or December 2017, Dr. Valletta allegedly requested an MRI for Mr.

Kinnel. *Id.* at 5 ¶ 18. This request was denied, appealed, and denied again. *Id.* After Dr.

Valletta allegedly informed UCONN medical staff about Mr. Kinnel being unable to lift his

shoulder after his shot, UCONN allegedly would not take Mr. Kinnel's case. *Id.*

Mr. Kinnel allegedly still has a shoulder problem. *Id.* at 5 ¶ 19.

Mr. Kinnel asserts his belief that Dr. Valletta should have provided him with an x-ray

and an MRI so that he could have known where to administer the shot in Mr. Kinnel's arm;

Mr. Kinnel alleges that the shot was not necessary and "made matters wors[e]." *Id.* He

claims that there are "machines that properly administer these shots." *Id.* He states that he

"feels as if the Doctor rushed his judgement of treatment, and blindly shot [him] in the

shoulder with these shots." *Id.* at 7 ¶ 20.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints

against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] . . . is

frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks

monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see*

*also Liner v. Goord*, 196 F.3d 132, 134 (2d Cir. 1999) (explaining that, under the Prisoner

Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory);

*Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district

court screen a civil complaint brought by a prisoner against a governmental entity or its agents

and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails

to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

4

## III.   DISCUSSION

In his Complaint, Mr. Kinnel asserts Eighth and Fourteenth Amendment violations based on deliberate indifference to his medical needs and unsafe conditions, conspiracy to deprive him of his civil rights, and state law torts of negligence, medical malpractice, and assault and battery. Compl. at 8–9 ¶¶ 2–7. Mr. Kinnel's complaint also suggests that he intends to assert a claim of intentional infliction of emotional distress. *See id.* at 8 ¶ 2, 9 ¶ 5.

As an initial matter, Mr. Kinnel cannot assert any claim under 42 U.S.C. § 1983 against the State of Connecticut because the state is not a "person" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983).

Accordingly, any claims against the State of Connecticut are not plausible and must be dismissed.

### A.   Section 1983 Claims against Dr. Valletta

Mr. Kinnel's Complaint has only alleged facts concerning his medical treatment for his left shoulder, but it alleges no facts concerning any unsafe conditions of confinement. Thus, the Court considers whether Mr. Kinnel alleges any plausible claims of constititutional violation based on medical indifference against Dr. Valletta.

Before reviewing the substance of Mr. Kinnel's medical indifference claims against Dr. Valletta, the Court considers the applicability of the relevant statute of limitations.

#### 1.   The Statute of Limitations and Equitable Tolling[4]

---

[4] Although the statute of limitations is generally raised as an affirmative defense, the Court may dismiss a claim where the allegations of the complaint demonstrate that the relief sought is time-barred. *See Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980); *Reese v. Lightner*, No. 3:18-cv-1922 (KAD), 2019 WL 2176342, at *3 (D. Conn. May 20, 2019) (collecting cases).

A federal court must look to state law to determine the applicable statute of limitations in a § 1983 suit. In Connecticut, that period is three years. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) (holding that the three-year personal-injury statute of limitations period set forth in Conn. Gen. Stat. § 52–577 is the applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983).

Federal law, however, controls when the cause of action accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.") (alteration and emphasis in original). Under established precedent in the Second Circuit, the accrual date for § 1983 actions occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)). In the context of deliberate medical indifference, such claims accrue when the sought medical treatment is denied. *See Traore v. Police Off. Andrew Ali Shield*, No. 14 Civ. 8463 (ER), 2016 WL 316856, at *5 (S.D.N.Y. Jan. 26, 2016).

This Complaint was filed on April 11, 2022, the date Mr. Kinnel signed it.[5] Absent tolling then, any claim that accrued before April 11, 2019 is time-barred. Thus, Mr. Kinnel's § 1983 claims based on medical indifference against Dr. Valletta are time barred by the statute of limitations.

The doctrine of equitable tolling—which is applied in both federal and Connecticut state courts, *see Rashid v. Mukasey*, 533 F.3d 127, 131 (2d Cir. 2008); *Wiele v. Bd. of Assessment*

---

[5] A *pro se* prisoner's complaint is deemed filed at the moment of delivery to prison authorities for forwarding to the district court. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993). Courts in this Circuit have assumed that a prisoner hands his or her petition or complaint to a prison staff member to be mailed or e-filed to the court on the date that the prisoner signed it. *See Lehal v. Cent. Falls Det. Facility Corp.*, No. 13-cv-3923 (DF), 2019 WL 1447261, at *19 (S.D.N.Y. Mar. 15, 2019) ("In the absence of other evidence as to when the prisoner actually delivered his complaint to prison officials, the court assumes that a *pro se* plaintiff hands his complaint to prison officials for mailing on the date in which he signs it.").

*Appeals*, 119 Conn. App. 544, 554 (2010)—"permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Chao v. Russell P. LeFrois Builder*, 291 F.3d 219, 223 (2d Cir. 2002) (quoting *Warren v. Garvin¸* 219 F.3d 111, 113 (2d Cir. 2000)). Such tolling provisions for § 1983 actions derive from state law. *See Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) ("Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled."). Connecticut law permits tolling of the statute of limitations due to a continuous course of conduct or fraudulent concealment of the cause of action by the defendant. *See Macellaio v. Newington Police Dep't*, 145 Conn. App. 426, 429 (2013).[6]

Mr. Kinnel's allegations do not support tolling on the basis of either (1) a continuous course of conduct or (2) fraudulent concealment. The alleged facts indicate that Dr. Valletta was assigned as medical staff at Garner. Mr. Kinnel was transferred from Garner, as he is presently at Corrigan, and no factual allegations suggest that Mr. Kinnel retained a continuing medical treatment relationship with Dr. Valletta. Thus, there is no inference that Dr. Valletta owes Mr. Kinnel a continuing duty related to his medical care or pain relief. Nor has Mr. Kinnel alleged facts to suggest that Dr. Valletta intentionally concealed any fact from him related to his medical needs.

---

[6] To establish the existence of a continuing course of conduct, a plaintiff must allege that the defendant: (1) engaged in wrongful conduct against the plaintiff; (2) owed the plaintiff a continuing duty that was related to the alleged initial misconduct; and (3) continually breached that duty by engaging in subsequent misconduct towards the plaintiff. *See Flannery v. Singer Asset Fin. Co.*, 312 Conn. 286, 311–13 (2014). Connecticut courts have concluded that a duty may continue to exist when "there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." *Id.* at 312–13 (cleaned up) (quoting *Watts v. Chittenden*, 301 Conn. 575, 584 (2011)). To prove fraudulent concealment, a plaintiff must allege: "(1) the defendants' actual awareness . . . of the facts necessary to establish the plaintiff's cause of action; (2) the defendants' intentional concealment of these facts from the plaintiff; and (3) the defendants' concealment of these facts was for the purpose of obtaining delay on the plaintiff's part in filing a complaint on his cause of action." *See Macellaio*, 145 Conn. App. at 432–33 (citing *Bartone v. Robert L. Day Co.*, 232 Conn. 527, 533 (1995)).

Accordingly, Mr. Kinnel's claims brought under 42 U.S.C. § 1983 against Dr. Valletta are barred by the relevant three-year statute of limitation and are dismissed as not plausible. *See* 28 U.S.C. § 1915A(b)(1).

Even if Mr. Kinnel's § 1983 claims arising from alleged medical deliberate indifference by Dr. Valletta are not time-barred, the Court concludes that Mr. Kinnel has failed to state any plausible claims under 42 U.S.C. § 1983.

### 2.      The Fourteenth Amendment Claim

Because Mr. Kinnel was a sentenced prisoner at the time relevant to his allegations about Dr. Valletta's treatment for his shoulder, his medical indifference claims are analyzed under the Eighth Amendment, which applies to sentenced prisoners. *See Darnell v. Pineiro*, 849 F.3d 17, 29–34, 33 n.9 (2d Cir. 2017).

The Supreme Court has instructed that, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Thus, Mr. Kinnel's claims of cruel and unusual punishment or deliberate indifference must be analyzed under Eighth Amendment standards as applied to the states through the Fourteenth Amendment. *See Panetti v. Quarterman*, 551 U.S. 930, 934–35 (2007).

Accordingly, the Court must dismiss as not plausible Mr. Kinnel's claims asserting Fourteenth Amendment due process violations against Dr. Valletta. *See* 28 U.S.C. § 1915A(b)(1).

### 3.     The Eighth Amendment Claim

In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the United States Supreme Court held that

"deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and

wanton infliction of pain' . . . proscribed by the Eighth Amendment."

Deliberate indifference to serious medical needs occurs when an official knows that an

inmate faces a substantial risk of serious harm and disregards that risk by failing to take

reasonable measures to abate it. *See Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998)

(citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Objectively, the alleged deprivation must

be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one

that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550,

553 (2d Cir. 1996) (internal quotation marks and citation omitted). A defendant must have been

actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their

conduct. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Thus, a defendant's

mere negligence is not cognizable on an Eighth Amendment deliberate indifference

claim. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 492 U.S. at 105–

06). Although "mere medical malpractice is not tantamount to deliberate indifference," such

medical malpractice may constitute deliberate indifference when it "involves culpable

recklessness, i.e., . . . a conscious disregard of a substantial risk of serious harm." *Chance v.

Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553) (internal

quotation marks omitted).

Mr. Kinnel has not alleged facts suggesting that Dr. Valletta acted with deliberate

indifference in violation of the Eighth Amendment.

As to the objective element, the Court assumes that Mr. Kinnel's pain and shoulder condition were sufficiently serious to satisfy the objective component of the analysis. *See Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006) (concluding allegations of "severe pain . . . [and] reduced mobility" in the shoulder were sufficient to raise an inference of a serious medical need).

Mr. Kinnel's allegations fail, however, to satisfy the subjective element of the Eighth Amendment analysis. Mr. Kinnel's claim against Dr. Valletta amounts essentially to his disagreement with Dr. Valletta's treatment decisions. But an inmate's disagreement with his medical provider about his medical treatment needs is not sufficient to support a claim of Eighth Amendment violation. *See e.g.*, *Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . ."); *Perry v. Furey*, No. 3:18CV1709 (KAD), 2020 WL 59941, at *6 (D. Conn. Jan. 6, 2020) ("The mere fact that the plaintiff believes he should have been seen sooner or more frequently than he was does not create a deprivation of constitutional dimension."); *Washington v. Westchester Cnty. Dep't of Corr.,* No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference.").

Taken as true, Mr. Kinnel's allegations suggest at most that Dr. Valletta may have acted negligently with regard to Mr. Kinnel's medical needs, but negligent conduct does not constitute deliberate indifference in the context of an Eighth Amendment violation. *See Farmer*, 511 U.S.

at 835; *see also Salahuddin*, 467 F.3d at 280 ("This mental state requires that the charged official

act or fail to act while actually aware of a substantial risk that serious inmate harm will result.").

Accordingly, Mr. Kinnel's Eighth Amendment claim against Dr. Valletta must be

dismissed as not plausible. *See* 28 U.S.C. § 1915A(b)(1).

### 3.        The Conspiracy Claim

Mr. Kinnel claims that Dr. Valletta and DOC conspired to violate his civil rights. In the

first instance, this claim may be dismissed because Mr. Kinnel's complaint fails to state any

plausible violation of his constitutional rights.

Even assuming he had alleged a plausible violation of his civil rights, Mr. Kinnel's

conspiracy claim is barred by the intracorporate conspiracy doctrine. *See Fed. Ins. Co. v. United*

*States*, 882 F.3d 348, 368 & n.14 (2d Cir. 2018) (noting that "because employees acting within

the scope of their employment are agents of their employer, an employer and its employees are

generally considered to be a single actor, rather than multiple conspirators"); *Burrell v. Quiros*,

No. 3:21-CV-393 (KAD), 2021 WL 1239916, at *6 n.3 (D. Conn. Apr. 2, 2021) ("Although the

Second Circuit has not yet considered whether the intracorporate conspiracy doctrine applies

to section 1983 cases, district courts within the Second Circuit have applied the doctrine

in section 1983 cases and, in particular, to section 1983 cases filed by prisoners.").

The intracorporate conspiracy doctrine does not apply when individuals are "pursuing

personal interests wholly separate and apart from the entity." *Ali v. Connick*, 136 F. Supp. 3d

270, 282–83 (E.D.N.Y. 2015) (citation and internal quotation marks omitted). To meet the

exception, a plaintiff must do more than simply allege that the defendants were motivated by

personal bias against him. *See Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (holding

that "in order to allege facts plausibly suggesting that individuals were pursuing personal

interests wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against the plaintiff"). Here, Mr. Kinnel's complaint raises no inference that Dr. Valletta conspired with other DOC officials or staff for their own interests that were "wholly separate and apart" from the DOC. *See Connick*, 136 F. Supp. 3d at 282.

Accordingly, this conspiracy claim must be dismissed as a matter of law.

## B.       The Official Capacity Claims

In *Ex Parte Young*, 209 U.S. 123, 155–56 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *See also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks and citations omitted).

Mr. Kinnel asserts official capacity claims for (1) a declaratory judgment that his federal and constitutional rights have been violated; and (2) an injunction ordering "a better and safer living condition, and to tend to every prisoner['s] medical need[.]" Compl. at 10.[7]

Mr. Kinnel cannot proceed against Dr. Valletta in his official capacity for declaratory and injunctive relief because he has not stated any plausible violation of his federal or constitutional rights. *See Henderson v. Quiros*, No. 3:21-CV-1078 (VAB), 2021 WL 5359739, at *8 (D. Conn.

---

[7] Any claim for money damages against Dr. Valletta, who is a state employee, in his official capacity is barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Nov. 17, 2021) (dismissing official capacity claims absent any continuing or ongoing federal or constitutional violation); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010) (requests for injunctive relief are remedies and are dismissed with the underlying claim).

In addition, Mr. Kinnel's request for a declaratory judgment is not plausible because the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). Furthermore, Mr. Kinnel's official capacity claims arising his medical treatment at Garner are moot because he is now at Corrigan. *See McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020) ("An inmate's transfer from a prison facility moots his claims for declaratory or injunctive relief against officials of the transferring facility.").

Accordingly, Mr. Kinnel's official capacity claims are dismissed as not plausible. *See* 28 U.S.C. § 1915A(b)(1).

### E.    Supplemental Jurisdiction

Because no federal claim in this action survives initial review, the Court declines to exercise supplemental jurisdiction over Mr. Kinnel's state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that the court may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it has original jurisdiction).

Accordingly, Plaintiff's state law claims are dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Complaint is **DISMISSED** without prejudice.

The Court will afford Mr. Kinnel an opportunity to file an Amended Complaint, by **December 9, 2022**, to correct the deficiencies identified in this Initial Review Order.

Failure to file an Amended Complaint by this date will result in the dismissal of the case with prejudice. Mr. Kinnel is advised that any Amended Complaint will completely replace his prior Complaint, and that no portion of any prior Complaint shall be incorporated into his Amended Complaint by reference.

If Mr. Kinnel does not file an Amended Complaint by **December 9, 2022**, the Court will close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of October, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE